Defendant, Appellee. Argument for the Appellant, Attorney Brian M. Dougherty. Argument for the Appellant, Attorney Beth M. Clark. Thank you. Good morning, Mr. Dougherty. Good morning, French. May it please the Court, Brian Dougherty on behalf of Katherine Hintralong. Issue before the Court is whether the Board erred in finding Ms. Hintralong ineligible for temporary disability benefits under Section 7-146 of the Pension Code. Isn't the issue basically the question before the Court is when did this disability occur? That is the issue before the Court is what did the medical evidence show in terms of when Ms. Hintralong's disability was incurred? Well, isn't the evidence with respect to that ambiguous? I mean, we have three different dates and documents from the doctor. We have three physician statements. The first physician statement was on an old form and there were no medical records attached. And the second form was a Board-approved form and there were in fact medical records attached to that form. Those medical records show that Ms. Hintralong was diagnosed with epilepsy, obstructive sleep apnea, and fatigue, just to name three conditions. The problem with the second form is that there was a question where it stated, did you recommend this person stop working? Dr. Sukolecki, the treating physician, checked the box yes and next to it it says if yes, indicate date. He wrote 7-2012. The problem is that the question itself and the answer is ambiguous. The Board construed that to mean that the actual date that it was recommended that she stop working was July of 2012. What Dr. Sukolecki meant is that he actually gave the recommendation in July of 2012. Well, how do we know that, counsel? I mean, we don't know that's what he meant. Well, there was a third certification that Dr. Sukolecki provided where he changed that date to 5-2012 to clarify any ambiguity. We don't know much about Dr. Sukolecki's involvement with giving disability opinions before the Board or any other administrative agencies for that matter. If there is a question or if there is an ambiguity in a document, we feel that all the ambiguities should be resolved in favor of Ms. Hintralong and against the Board. The Board clearly could have asked another physician to supply a written certification because Section 146A2 states that at least one physician should supply a written certification. Well, you equate experiencing certain medical conditions as the same thing as incurring a disability. What authority do you have for that? The plain language of the statute is our authority, Your Honor, as well as the non-medical evidence in the case as well. The non-medical evidence shows... Well, let's start with the plain language of the statute. Where do you find that in the statute? The portion of the statute that the Board relies upon is subsection B6. It talks about the employee cannot be separated from the employment prior to... Right. When the disability occurred. On the date the temporary disability was incurred. But there's no dispute in this case when she incurred her disabilities. There was medical records attached to this statement of claim that was submitted to the benefit review committee. Those medical records show that in 2006, 2008, I believe 2011 and 2012 that other medical providers stated that she was diagnosed with epilepsy, obstructive sleep apnea, and fatigue. Did she receive accommodations? She did receive a reasonable accommodation during the 2010-2011 school year to take short naps in her office. But that's not the same thing as being disabled. She was still working then. She was still working, but if you're disabled and you receive an accommodation that still allows you to work, you can still perform your job. The non-medical evidence in this case shows that once Ms. Hintralong had that reasonable accommodation removed in the 2011-2012 school year, it was clear that her disabilities were now taking over her ability to perform the job. She could no longer perform the job adequately. And we know that because the non-medical evidence is the March 2012 performance evaluation from her employer, which rated her unsatisfactory in every category. But why is that? It had nothing to do with her being a malingerer or her being lazy. It had everything to do with her disabilities now could not be accommodated. They took over, and she could not perform the job up to the standards that Kennel County expected her to perform. But how do we know that being disabled under the IMRF law is the same as being disabled or needing an accommodation under the ADA? I think the ADA supplements our argument in this case because somebody who is disabled can get a reasonable accommodation. But in order to get that accommodation under the ADA, you have to show that you can still perform the essential functions of your job with or without an accommodation. But how do we know that the definitions are the same? I don't believe we do know the definitions are the same. And under the IMRF statute that we're dealing with here, there is no definition of what a disability is. That being the case, we have to rely on what medical professionals say concerning a particular patient. In this case, Dr. Hinterlong was Ms. I'm sorry, Dr. Suglecky was Ms. Hinterlong's treating physician from at least 2009 through 2012. And there are medical records showing his treating her and as well as him diagnosing her with her various conditions such as epilepsy, obstructive sleep apnea, and fatigue. What the board did is it focused on Ms. Hinterlong being seizure free, which is incorrect. The board has to look at the totality of the medical evidence in this case because if Ms. Hinterlong was receiving a reasonable accommodation back in the 2010-2011 school year, allowing her to take short naps, that really shows that they were trying to accommodate her fatigue and obstructive sleep apnea. Once that was removed, then those conditions became problematic for her at work. And what medical data, what notes from the doctor, what information do we have to look at that IMRF had to look at? What shows that in the record? In the record, when Ms. Hinterlong's claim was initially denied, she filed an appeal with the Benefits Review Committee. In that appeal, she was required to file a document called a statement of claim. In that statement of claim, there were medical records from four other practitioners, including Dr. Sukalecki, that went back all the way to, I think, 2006, 2010, 2011, 2012, diagnosing these same conditions. In 2011, Dr. Sukalecki also had treatment notes diagnosing Ms. Hinterlong with these exact same conditions and even more. And in April of 2012, that was the last treatment date that we have on file in this case, showing her being diagnosed with those conditions. Those are the same conditions that she worked with all these years, though. Same conditions that she worked with. However, back in the 2010-2011 school year, as I stated earlier, she was given a reasonable accommodation to allow her to overcome those disabilities. So when you look at the non-medical evidence in the case, as well as the medical evidence in the case, Kendall County says that she can no longer perform her job as of March of 2012. And we submit that that was because she was no longer being accommodated at work and the disabilities took over. That's not what they said on March 20th, was it? Well, that's- They didn't say she could no longer perform her job. Well, she- They gave her a poor work evaluation on that date. Isn't that correct? That's correct, but again- I mean, they didn't say she couldn't perform her job, meaning she wasn't capable for medical reasons or any reasons related to a disability. Well, the fact that they rated her unsatisfactory in every single category, in conjunction with the fact that in the prior calendar school year she was given an accommodation without incident, plus the current medical evidence from Dr. Suglecki, leads to the reasonable conclusion that because she was no longer being accommodated at work, that her disabilities were impairing her performance in doing the job. Well, the doctor didn't reference any specific medical event that occurred on May 30th, did he? Which was the operative date here. Right, because in April of 2012, when Ms. Hinchlong saw Dr. Suglecki, she was not terminated as of that date. And he told her to come back in a year at that time. Correct, but the purpose of that visit was not to get a disability opinion. It was only a month later that she was terminated. May 30th was her last date. She was terminated June 5th. Her last day of work was May 30th. Her termination date was June 5th. And then Dr. Suglecki submitted the physician's statement to support that Ms. Hinchlong suffered from her disabilities. It's our contention that under subsection A2 of the pension code, that that's not meant to be a high hurdle for an employee to overcome. And your contention is that that statute does not require contemporaneous disability letter, contemporaneously with the disability, correct? Exactly. If a physician supplies a physician statement and attests to the disability, and the board feels that it needs further medical evidence, it is certainly empowered under subsection B4 and B7 of the code to gather medical evidence and have the employee submit to a physical examination. But doesn't the non-contemporaneous, you know, allow for some shenanigans? I mean, somebody gets terminated and then they're going to go back and say, hey, wait a minute, I was disabled. Isn't that contemporaneous or a little more realistic, make it more of a safeguard for the statute? That's absolutely correct. If, for example, there's been no incident with an employee at work, the employee is fired and all of a sudden a physician says this person had a heart attack after being terminated and there's no other medical records going back in time, certainly the board would question that. But in this case, we have medical records in this case going back all the way to 2006 as to her conditions that remained all the way up until 2012. To say that her disability was incurred after she was separated is to completely ignore the only medical evidence we have in this case from Dr. Suglecky and also it completely ignores the non-medical evidence in this case from Kendall County as well as completely ignores the fact that when Ms. Hintralong had a reasonable accommodation in 2010-2011, she was able to perform the job. Does the doctor give any, is there any reference whatsoever in the medical reports as to why the doctor chose May 30th as the start date of her disability? I think it was because there was some confusion when he completed the second medical certification form because it showed 7-12 as the date. I think he was just trying to correct a Scribner's error. But you're speculating. There isn't anything in the record that tells us that, is there? I don't believe so. I believe that's kind of extrapolated from the communications where the board was questioning how you can be disabled and have that determined after you're separated and you need to show that you were disabled prior to separation. So I think he was just trying to correct an error in the paperwork because we don't know nothing about Dr. Suglecky and his involvement with administrative agencies and the board. I mean, there are some physicians out there in cases that do this for a living. They know how to fill out the paperwork properly. And I believe we cited numerous cases as such in our brief. And in those cases, I believe it's Marconi, Swanson, Rose McKee. Actual disability determinations were made sometimes three years, one year, months after an application was filed or after the employee was separated from employment. So in our cases under Article III of the Pension Code, if it's proper to opine on someone's actual disability months or years later, it doesn't make any sense to impose a more strict standard in terms of eligibility, which in our contention is not meant to be a difficult threshold to overcome. I kind of look at it as Section A is the pleading stage. Section B is the trial phase. In this case, what the board essentially did is looked at the certification and said, there are no medical facts that you could ever prove to show that your disability was incurred prior to separation. That's not the board's job to do that. The board can't substitute its lay opinion for the opinion of medical professionals. I'm sorry, say that again. The board said she couldn't ever prove that? That's the way I look at the statute to try to analogize it to a pleading, if you will. A physician's statement is the pleading, if you will, to kind of get your foot in the door. The board looked at that physician's statement essentially and said, we don't believe it. We don't believe that Dr. Suclucky could ever opine that you were disabled prior to separation based on the medical records because he didn't see you around May 30th of 2012. He last saw you in April, and we don't have magic language in the medical records to state that. As of May 30th, I find you disabled, even though- What were they to base this on then, if there isn't anything in the medical records? I mean, the statute requires a physical disability caused by disease. So, wasn't IMRF entitled to actually have something in the medical records that would have pinpointed what had changed between April, at least April, if not the time before, and May 30th? No, because the written certification, as the statute says, is the proof. So that's enough. They don't need anything more than a doctor saying a person is physically disabled as of X date. That's all they need? That's all they need, and in this case, we supply even more because the disability, in this case, was clearly incurred prior to May 30th of 2012. To say that all of a sudden she became epileptic and had obstructive sleep apnea and fatigue after she was no longer employed would be to reject all the medical evidence in the case. I don't think anybody's saying that. I mean, there's documented evidence that she had all these problems before. The issue is when the disability was incurred. I thought there was evidence in the record that she saw the doctor in April for the specific purpose of discussing disability. There was a statement in the medical record that she was thinking about filing for disability benefits, but at that point in time, she had not been terminated from Kendall County, so she didn't take that step. So, I mean, she's going to, again, play this game and wait until she's terminated, then go for disability? And if she wasn't terminated, then she would have just continued working? And she wouldn't have been disabled because she would have continued working? I don't believe that's the case. The performance evaluation said that it was going to be recommended that she be not rehired for the next school year. At that point in time, we don't know what communications she had with Kendall County  And, again, this is a situation where, you know, an employee may not really know a lot about how the IMRF works and how the paperwork works in a case like this. So, if you're going to knock people out based on the paperwork, you're not doing justice to the statute. Well, let's talk a little bit about what we're doing here, which is to review the findings of the board. The board adopted the Benefits Review Committee report. The Benefits Review Committee report said she saw the doctor in April for a disability. The doctor said nothing about disability, said come back in a year. Then she gets terminated, then all of a sudden she's disabled. And so tell me, what is our standard of review of that finding by the board? We say it's de novo review. Why is it de novo review? Isn't that a factual finding? Isn't the board looking at all these things and making a factual determination as to whether the evidence supports the date of disability? And the only evidence we have is from Dr. Sukalecki, who says it was incurred prior to separation. No, but there's other evidence, which I just mentioned. That is, she saw Dr. Sukalecki in April. He didn't find her disabled. Then she gets terminated. Then he writes a letter, presumably before he even sees her, saying, oh, yeah, wait a minute, she was disabled May 30th, and she hadn't even seen him. So, I mean, that's in the evidence. That's part of the evidence that the board could consider. It's part of the evidence, but in that situation, again, the problem is that the board looks at that evidence and is resolving all doubts against Ms. Hintralong. If the board had doubts about it. Wait, who has the burden of proving disability number one and when it was incurred number two? That would be Ms. Hintralong. Okay, so the board says, Ms. Hintralong, you haven't proven this factually to us, based upon everything that we know. How is that not a manifest weight standard? Because there's no other medical evidence in the case except for Dr. Sukalecki. Essentially what the board did, in our opinion, is to substitute its lay opinion for that of Dr. Sukalecki and say, well, we don't see. So the board has to throw out common sense. If a doctor writes, I mean, I understand your argument that they could have her examined by someone else, but if a doctor writes, you know, I find that she's disabled as of this date because the moon is made of green cheese, if they decide not to, if they decide to say that's the silliest thing I've ever heard, you say she gets, unless they send her off to an independent evaluation, she should get it because the doctor said she's disabled as of this date. They don't look behind that. I agree that there are circumstances when a written certification from a doctor could not supply enough evidence. For instance, if the only evidence in the case shows that there's a medical record that the employee suffered a heart attack after separation, and that's the only evidence that you have in the case, and somebody's trying to relate that back to when the person was employed, I agree. There are factual situations where the written certification may, for all intents and purposes, plead the applicant out of the board and, therefore, show that the person was not, in fact, disabled. But I don't think this is that type of case. Mrs. Hinchalong is not a malingerer. She's not trying to defraud the system. She's probably not well-versed in how the IMRF works, and Dr. Suglecki's probably not well-versed in how the IMRF works. To find her ineligible based on what appears to be some error in filling out some paperwork does a manifest injustice to pensioners, as in this case. Mr. Jordy, thank you so much for your argument. You'll have an opportunity in rebuttal. Thank you. Mrs. Clark. May it please the Court? Counsel, Beth Janicki Clark on behalf of the Illinois Municipal Retirement Fund. I think IMRF's position in this case can be broken down really to three main points. There are three main points that support IMRF. The law itself supports the determination by IMRF that Mrs. Hinchalong had to be employed at the time she incurred her disability. How do you distinguish Marconi? The Marconi case doesn't deal directly with the IMRF rules. That deals with a police fund, and it deals with the issue of whether or not there's a disability. The actual medical question in this case, the question really is, does the law require Mrs. Hinchalong to be employed at the time her disability was incurred? Where in the statute does it say it has to be contemporaneous? It doesn't say the words contemporaneous, but if you look at the statute itself, and IMRF's position is that its interpretation of the statute should be given substantial weight and deference because IMRF as an agency is an informed source regarding the statute. You can't interpret the statute in isolation. A and B should be read together. Subsection B specifically states, subsection B-6, that the employee cannot be separated from the service of the participating municipality or instrumentality thereof or participating instrumentality which employed him on the date his disability is incurred. And if you look at the statute as a whole, the word employee is throughout the statute. So if we accept that May the 20th he found her disabled, she wasn't separated from employment, correct? May the 20th was never a date that the doctor put as the first. May the 30th, I'm sorry. May the 30th. May the 30th was her last date worked with her employer. I believe the employer actually terminated her on June 5th. Right. Right. So if we accept that date, she was still an employee of the school. She was an employee on May 30th. Right. That was her last day at work, but she was still employed through June 5th. I believe she received some compensation through that time. So in your brief, focusing on the rule, which provides that IMRF can't accept a doctor's statements that certify disability for a date prior to the member's visit or for a date in the future, you say that the rule requires relatively contemporaneous medical documentation from a physical exam. How is a claimant to know what IMRF will accept and won't accept? IMRF works with the claimants when they apply for disability to explain what's needed. So the rules then are different for each person? No, they are not. The rules specify that when the doctor fills out his Form 542, and if you look at Section 540C of the AA Manual, which constitutes the administrative rules of IMRF, Form 542 specifically is required to include with it associated office visits, notes, and medical records. IMRF does not accept doctor's statements that certify a disability for a date prior to the member's visit or for a date in the future. Well, what about a claimant who's been under a doctor's continuous care for a long time? I mean, that doctor could apply this to disability without a contemporaneous visit, couldn't he? The standard for disability is not whether you've been under a doctor's care. It's whether or not you are able to continue working for your IMRF employer in any position that could be reasonably assigned to you. But isn't what the IMRF position is requiring that somebody actually see a doctor on or before the date of the disability being incurred? Isn't that the way you're applying the rule? It requires a doctor's visit in order to back up the date of disability or the date that the doctor determines is the stop work date for the employee. Well, how about if the employee can't get a doctor's appointment until after the disability is incurred? Exactly. If there's sufficient evidence backing up the date that the doctor gives, we might look at that. But typically, in this case, Ms. Hinterlund went to the doctor in April. She told Dr. Zukolecki at that time that she wanted to discuss disability. He didn't declare her disabled at that time. This is after her poor performance review where... But she had all these continuing medical issues, did she not? You heard counsel articulate them. They're articulated in the briefs. I mean, she'd been seeing him from at least 2009. There's no question that she had continuing medical issues, but she continued to work with those continuing medical issues. It wasn't until she knew she was going to be terminated that she started this process of applying for disability. And, in fact, she didn't even apply for disability when she got her poor performance review. She waited to apply until after she was terminated. She knew she was terminated, and she waited all that time before she applied for disability. Well, she made a doctor's appointment for April 20th, didn't she? I mean, she found out in March. She got a doctor's appointment within weeks after that to discuss disability. So to say she waited a couple weeks, how long? Maybe people can't get in to see a doctor so quickly. But on April 20th, the doctor didn't declare her disabled. There's so much conflicting evidence in this case. You know, the second 542 form that was filled out by Dr. Sukolecki declared that she should stop working in July. Well, but that's one interpretation. You heard counsel indicate that it could be interpreted differently, that in July he said that she should have been declared disabled or terminated or stopped working, I'm sorry, in May.  But IMRF has always used the stop work date that's designated by the doctor as the date that the disability is incurred because under the statute, the standard for disability is when you are no longer able to perform any job that your employer can reasonably assign to you. So the stop work date is what IMRF uses to determine disability date. And if that stop work date is after the time that the employee is employed with the IMRF employer, then there is no qualification to receive disability. So IMRF didn't even really look at Ms. Hinterlong's medical conditions to determine whether or not she could perform her duties of her job. But that third form had the stop work date as May 30th. He corrected. Maybe he wasn't, as counsel explained, familiar with how to do this. But we have a third form that has that stop work date of May 30th. But there was no records that would show that at any time after he saw her in April through May 30th that her circumstances changed somehow and that for some reason on May 30th. Does IMRF need to know that? The doctor's certification is all that's required under the statute, isn't it? The doctor's certification, in accordance with IMRF's reasonable rules that it has adopted regarding those certifications. The statute itself is unclear as to what is required. It says a medical certification. IMRF, we feel, has the authority to adopt reasonable rules to identify what's required when a medical certification is provided to IMRF and what's required of that certification. IMRF could have had her examined too, couldn't they? IMRF can order examinations, and typically IMRF does that in the case where IMRF is determining whether or not there is a disability. In this case, that's not what was determined. What was determined is whether or not she was employed at the time her disability was incurred. And IMRF determined there was no qualifications for receiving disability benefits because she was not an employee at that time. Can IMRF add conditions that are not in the statute? IMRF can add conditions as long as they are not directly in conflict with the statute. And it's IMRF's position in this case that the conditions that it's added in Section 540C of the Authorized Agent Manual are conditions that do not conflict with the statute. They serve the purpose of furthering the statute's intent. But how would a person applying for a disability know if they read the statute under praising, we look at the statute, and if a person is applying and sees the statute and says, I need a doctor to say I was disabled on a certain date, incurred before I was terminated, and then they go two months, three months after to see the doctor, then you come back and say, wait a minute, the statute may not say that, but 540C says that you had to have seen a doctor at or about the time the disability was incurred. Aren't you adding a condition? No, I think this isn't adding a condition. This is clarifying what's required for the medical certification, and it's making it clear, and it's furthering the statute's intent that only participating employees are authorized to receive IMRF disability benefits. And if you look further into subsection B6 of the statute, there's one specific circumstance that's mentioned in that statute where an employee who is receiving disability benefits and gets terminated can continue to receive their benefits. That's the only time a terminated employee can receive disability benefits. There's nothing in the statute that provides any guidelines or rules for terminated employees to come back and apply for a disability benefit. It just can't happen. So the question that IMRF was looking at was not whether or not she was disabled because, let's face it, there's not many places in the country where you're going to continue to maintain your employment while you get some accommodations to take a nap and all the accommodations this woman got. I mean, nobody in the public sector would have kept her. So I guess the question is, you're saying, no question, she was probably disabled. The question is, was she disabled during her employ? We didn't determine whether she was disabled. The question was, was she employed when her disability was incurred? And the evidence that was presented to IMRF shows that she wasn't disabled when her disability was incurred because of the dates that the doctor gave us and no medical evidence backing up the dates of disability that were provided to IMRF. So the bar is pretty low, apparently, for IMRF employees with respect to job expectations, I guess. Could you ask that? I mean, I guess to me the main issue you're looking at then is what date did she put on the form? Because in my opinion, and I don't think anybody, even IMRF, would disagree, this woman was, she probably should not have kept working when they gave her accommodation to take a nap in the middle of the day or that she was over so many pounds or that she had sleep apnea or that she had this, that, or the other. I mean, looking at that medical record, you know, she was like, it's amazing that she could even get up and go to work in the day, much less maintain a job. But she went to the doctor and the doctor did not declare her disabled at that time. She's had some of her conditions she's had since childhood. Right. And she maintained a job for many, many years in April of 2012, which is the evidence that we had. The doctor saw her, Dr. Sukolecki, and didn't declare her disabled. He told her to come back in a year. That's what the Benefits Review Committee looked at, wasn't it? I mean, you keep talking about these forms and dates and forms and things, but didn't the Benefits Review Committee really hang its hat on the fact that she was seen in April, not declared disabled, then terminated, then these forms started flowing in thereafter? The forms were part of the record, obviously, but the Benefits Review Committee did look to those specific facts, and they, you know, followed the facts and applied it to the law, which is you have to be employed when your disability is incurred, and they found that there was nothing in the record that showed that her disability was incurred. And as Mr. Doherty pointed out, there was evidence in the record attached to the statement of claim, doctor's visits back from 2009, 2008. That did not support the date of disability because Ms. Hinterlong continued to work throughout this time. That's my point. Taken as a whole, and I think you kind of answered but didn't answer Justice Berg's question, you're hanging your hat on today, the last day of work was May 30th or June 5th, and she wasn't disabled in April, according to the doctor, but was May 30th. Shouldn't, when, and they did, IMRF did take a look at the medical history, as you just said, and that's what I think Justice Berg was asking you. They took a look at it. So taken as a whole, shouldn't they take as a whole and look at all of this medical history in making their determination? They weren't determining whether she was disabled. Okay, so the only thing they were determining was the date of the form. You're saying that's all they determined. And did she qualify? That's right. Was her disability incurred while she was actively employed? Because the statute is complete with references that you need to be an employee. Well, the doctor opined on the last form, did he not, that she was disabled as of May 30th. That was in July when she saw him on July 24th or so. He opined that as of May 30th, when she was still employed, she was disabled. This was the form that he changed the date and put on May 30th after IMRF had already denied the claim. So what doctor do you have to dispute what that doctor stated? We did not have a doctor at this time because it wasn't a medical disability extent issue. It was an issue of do you qualify to be considered. So you're just judging the credibility of the doctor. We did not judge the credibility of the doctor. If the doctor lied by writing out the form, then you're judging the credibility of the doctor, correct? The form stated May 30th, right? The evidence in the record that we had was from April. That April through May 30th, she continued to work. There was nothing from a doctor that said, you know, you're disabled, you're unable to work. There was nothing during that period of time when she continued to work that would show that she had incurred her disability at any point during that time. And I don't, you know, May 30th, coincidentally, is also her last day that she worked with the employer. So what does it mean to incur the disability? I mean, this person had these conditions. I mean, she was experiencing those conditions. So what does the word incur mean? Somebody has to have a specific event, a heart attack, and so these other conditions wouldn't qualify? No. She was experiencing all of those conditions during this period of time, April through May 30th. The statute's clear that you incur a disability under subsection A. You have to look at subsection A. So what does incur mean? Incur means the participating employee, and that's key, shall be considered temporarily disabled if, one, he's unable to perform the duties of any position which might reasonably be assigned to him by his employing municipality, and, two, the board has received written certifications from at least one licensed and practicing physician in the governing body of the employing municipality or instrumentality thereof that the employee meets the conditions set forth in subsection 1 of this paragraph A. Now, isn't all that met? We don't know if 1 was met because... There's no evidence that the reason that she was unable to perform her job had anything to do with her physical disabilities except for a letter from the doctor that was submitted later. Could that have been the case? Maybe, but... Taking all the medical documentation together, do you think that that could have been the case? She performed her job adequately for many, many years. This was the first ad review she got, I believe, and... You believe? I believe. I don't... It's not enough. I think that it's in the statement of claim that was filed by Ms. Hinterlong's attorneys. But still, going back to incurred, I'm not sure you read the statute when I asked what incurred meant. Incurred means you meet the two conditions of the statute and the rules of IMRF which reasonably interpret those two conditions. The second condition is... So does that mean that somebody can't have experienced these medical conditions, this disease or these diseases that's referred to in the statute over a period of time? It's not when you first experience the conditions that... The conditions have to render you unable to perform your job. And IMRF pays disability benefits from that date forward. So from that date, when you have to be a participating employee who is unable to perform your job, IMRF will pay the benefits. And the reason behind this is that there's nothing in the statute that discusses benefits for terminated employees. And the reason behind that is because IMRF employees, when they're on temporary disability, they continue to earn service credit. It's as if they are still employed. So the statute talks about disability benefits for employees because it seems that it would be absurd for a terminated employee to be able to apply for a disability benefit and incur additional years of service credit when then their IMRF employer who terminated them is going to be the one who becomes liable to pay for the ultimate pension that results from the increased service credit. So the statute is clear. The individual has to be an employee on the date the disability is incurred. And incurred is as defined in the statute and IMRF's reasonable rules related thereto that don't conflict with the statute. And in this case, Katherine Hinterlong did not... The medical certification filed by her doctor did not comport with IMRF's reasonable rules. Considering the evidence that was supported thereto, that was attached thereto, that did not support the date of disability that he put in his certification. Thank you, Ms. Clark, for your argument. Thank you. Mr. Doherty, you have your opportunity. The board freely admits that Ms. Hinterlong has these disabling conditions. And the non-medical evidence in the case has been completely ignored by the board. A reasonable interpretation of the evidence shows that when she was working, at least as late as the 2010 to 2011 school year, she was able to perform her job because she was given an accommodation. Then all of a sudden, in March of 2012, the 2011-2012 school year, she could no longer perform various aspects of her job. Now, the reasonable inference is that that's the case because she was no longer given an accommodation and the disabilities manifested themselves to an extent that she could no longer and was unable to perform any duties reasonably assigned to her. There's nothing in the record that supports that, is there? What can you point to in the record that supports what you just said? Kendall County also submitted a certification. In that certification, are they saying that the accommodations were removed from her, were taken away? It doesn't say that directly. That was a statement that was made in Ms. Hinterlong's statement of claim because what happened is she was an employee saw her sleeping and told somebody about it, and that's why the accommodation was removed for the 2011-2012 school year. She thought the accommodation would have lasted indefinitely, and Kendall County removed that, and that's why we submit that once that accommodation was removed, her disabilities became to such an extent that she could no longer perform her job satisfactorily. What is there in the rule that supports that other information besides medical information, besides what is specifically pointed to in the rule that counsel articulated a couple minutes ago should be considered? IMRF is focused, as opposing counsel indicated, on the requirements of the rule. What is there in this rule or this statute and the rule to say that other evidence such as the ADA accommodations should be taken into account by IMRF? What requires them to do that? What authority do you have for that? I believe under A2, the employer also has to submit a certification to the board, and Kendall County did submit a certification that she was being terminated. The reason given was performance. It did not go into any detail as to why the performance reached an unsatisfactory level. Well, the performance evaluation talks about a lot of different things, specifically unrelated to medical issues. It talks about communication levels, talks about failure to communicate adequately with various parents of children whom she saw, talks about the level of her voice and how that was raised at various times. So there are a lot of different issues unrelated to any medical issues we've talked about here that is contained in that performance evaluation. That is true, but when you look at her entire performance history, that was the worst evaluation she ever received. And prior to that, we don't have any other evaluations. She had so many disabling conditions that she was allowed to work there for an extended period of time without incident and allowed to take short naps in her office, which is an accommodation that prior to this I've never even heard of. And all of a sudden in the prior, in the latest school year, that accommodation is removed. And then suddenly she's given an unsatisfactory rating. I think based on all the evidence and given all reasonable inferences in that evidence in favor of Ms. Hintralong, it is certainly more than reasonable to conclude that once that accommodation was removed, that her disabilities were of such an extent that it impacted a variety of issues that she needed to undertake. And she knew that, though. And she knew she was having these problems. Correct. And she knew that she received this bad performance evaluation. Correct. And she knew she was going to be terminated at the end of the school year. Well, that, I mean, it says in the performance evaluation that it was going to be recommended that she be terminated. Okay, she knew that it was hanging over her head. Correct. So she sees the doctor in April. They discuss her disability. And the doctor tells her to write up her chronic limitations and return in a year. And then she's fired. And then she doesn't see him again until July 24th? 24th, correct. Okay. But then he writes up these forms on July 3rd. So how does a doctor go from write up your limitations to see, we'll check on this disability issue, write up your limitations that you experience over the next year, and then we'll come back and talk about it, to you're disabled as of May 30th, which is literally a month after he saw her in April, but he makes that finding in July without seeing her until the end of July? How does that jive? The way I look at it is that the specific purpose of seeing Dr. Suglecki in April of 2012 is not necessarily to have him give a disability opinion as of that date. There could have been other medical reasons that he went and saw Dr. Suglecki as of that date. Given that he treated her for at least three years, he was in the best position, and based on the record, the only position to give an opinion that she was, in fact, disabled prior to separation. But there's nothing in the supporting records that justify that. I mean, it has her diagnoses that she's had for years in there, and it has all the different diagnoses that she's had for years and worked with and received presumably satisfactory reviews with, and she's had no seizure activity according to the report. I mean, there's nothing in the supporting report that was filed with the certificate, I think, from the lawyer, if I'm not mistaken, in August. That's correct, but, again, we don't know much about what Dr. Suglecki knows and doesn't know about filling out these forms. He got a form, and he filled it out to the best of his ability because that's all he thought she needed in order to get temporary disability benefits. But, again, I get back to my question I asked you on your first argument. Whose burden is it to submit the right forms to show that there was a disability and when it was incurred? It's Ms. Hintralong's physician's statement to do state that she has at least three disabling conditions, and dates are included on here. The second form that was submitted states in the black, bolded box, disabled from 5-30-20-12 pre-occurrence. So there is enough information in that form to show that she was, in fact, eligible for benefits in conjunction with the medical records in this case. In conclusion, we ask that this court reverse the decision of the circuit court, which affirmed the board's finding that Ms. Hintralong was ineligible for benefits. Also ask that the court make a finding that she is, in fact, eligible for benefits and amend the case back to the board for further proceedings not inconsistent with this court's opinion. Thank you. Thank you, counsel. Thank you for your arguments. Thank you. The court will be in recess and a decision will be rendered in due course. We'll take a break until the next case.